UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| TONY MANCUSO | CASE NO. 2:21-CV-03947 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| STARR SURPLUS LINES INSURANCE CO | MAGISTRATE JUDGE LEBLANC |

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 97] filed by plaintiff Tony Mancuso, in his official capacity as Calcasieu Sheriff and Tax Collector ("CPSO"). Defendant Starr Surplus Lines Insurance Company ("Starr") opposes the motion. Doc. 110.

I.
BACKGROUND

This suit arises from damage to property owned by CPSO, a political subdivision of the state of Louisiana, in Hurricanes Laura and Delta and Winter Storm Uri. At all relevant times the property was insured under a surplus lines policy issued by Starr. CPSO filed suit in this court on November 12, 2021, alleging that Starr had failed to timely or adequately compensate it for covered losses. Doc. 1. Accordingly, it raised claims of breach of insurance contract and bad faith under Louisiana law. The matter is set for jury trial before the undersigned on April 22, 2024. Doc. 58.

CPSO now moves for partial summary judgment on coverage allegedly owed to a maintenance building located at 5400 East Broad Street. Starr admits that no payments

were made for this location. Starr opposes the motion, arguing that CPSO does not have an insurable interest in the building because it was leased from Calcasieu Parish Police Jury and that its misrepresentations concerning ownership bar coverage. Doc. 110. In the alternative, it asks the court to limit its liability to the amount stated in the Schedule of Values and dismiss any potential bad faith claims arising from this building's coverage. Starr has also filed an objection to the SOV attached by CPSO as an exhibit to its motion. Doc. 111.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

CPSO argues that coverage is owed for the Maintenance Building, pointing to its listing on the policy's Schedule of Values ("SOV") as Location 001, Building 003. *See* doc. 103. Starr admits that no payments have been made for this location even though damage was sustained at that location. Nathan Leverenz, who adjusted the claim for Starr, testified that Starr had not made any payments toward this location because it believed the damage was also covered by insurance provided by the Calcasieu Parish Police Jury ("CPPJ"). Doc. 97, att. 5, pp. 472–77. It also objects to the SOV attached as an exhibit to CPSO's motion, showing by declaration of the lead underwriter for this policy, that the one attached by CPSO was a draft and not the final version attached to CPSO's policy. Doc. 111, att. 1. As CPSO notes, however, the two documents are nearly identical for their uses on this motion and only appear to differ in their description of the building—it is listed as "Maintenance Building & Generators" under the final version and simply as "Maintenance Building" under the draft version. Accordingly, the court finds no need to rule on which version is "correct."

As for the substance of this motion, CPSO maintains that the building is covered under the terms of the policy and that Starr is in bad faith for failing to tender the undisputed amount owed on repairs. Starr disputes coverage under the policy's terms for a building not owned by CPSO and further maintains that CPSO's misrepresentations of ownership bar coverage. In the alternative, it argues that (1) coverage is limited to the values provided in the SOV and (2) even if the court finds coverage, there are no bad faith penalties owed based on Starr's reasonable dispute over coverage.

### A. Whether coverage is owed

CPSO concedes that the Maintenance Building is owned by CPPJ and leased by CPSO. Doc. 97, att. 1, p. 5. Starr first asserts that coverage is barred under Louisiana law, which requires that one seeking to enforce an insurance policy must have an insurable interest in the property. La. R.S. § 22:853. An "insurable interest," under this statute, "means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." *Id.* Put another way, "[i]f the loss of the insured property does not expose the insured to either direct, immediate, or potential financial loss or liability, the insured does not have an insurable interest." *Armenia Coffee Corp. v. Am. Nat. Fire Ins. Co.*, 946 So.2d 249, 254 (La. Ct. App. 4th Cir. 2006).

After Starr first raised questions as to this coverage, CPSO provided a letter from CPPJ general counsel Samuel Gabb explaining CPSO's "use or occupation of properties owned by the CPPJ." Doc. 97, att. 6, p. 3. Specifically, Mr. Gabb stated:

> The powers of the CPPJ are established by Louisiana law, primarily through La.R.S. 33:1236. That statute vests the CPPJ with broad powers in the interest of public welfare, including the authority to provide offices for the use of the CPSO. See La.R.S. 33:1236(47) (The CPPJ has the power "[t]o open and maintain such offices and suboffices as may be required for the performance of the duties of the parish officials and employees."). In addition, other statutes place obligations on the CPPJ to assist the CPSO, including La.R.S. 33:4715, which requires the CPPJ to provide a jail to be operated by the CPSO.
> Based upon the foregoing, the CPPJ has furnished buildings and other spaces to the CPSO for the CPSO's use. In these situations, the CPPJ provides the property to the CPSO at no charge. However, the CPSO is responsible for its own operations within those properties, including any equipment or improvements that pertain to the CPSO's law enforcement obligations.

> The CPPJ and the CPSO have not entered into any leases or other written agreements detailing the CPSO's use or occupation of the buildings owned by the CPPJ. Rather, the CPPJ and the CPSO have always worked well through their constant dealings to serve the interests of the residents of Calcasieu Parish.

*Id.*[1] In a 30(b)(6) deposition, CPSO Division Captain of Risk Management and Finance Jeff Cole confirmed that the maintenance building was owned by CPPJ but provided "critical infrastructure" for CPSO insofar as its chillers supported operations at the Calcasieu Correctional Center. Doc. 110, att. 10, pp. 93–94. CPSO avers that it "has spent $905,872.81 to repair the Maintenance Building, exclusive of the contents." Doc. 117, p. 7. Accordingly, it maintains that it has a substantial economic interest in the premises.

Starr analogizes the matter to *Life Church of Oak Grove, Inc. v. GuideOne Mutual Insurance Co.*, 488 F.Supp.3d 509 (W.D. La. 2020) (FOOTE, J.), where the court held that a church did not have an insurable interest in a building it leased from a parish school board even though the lease made the church responsible for maintaining fire and hazard insurance on the premises.[2] There, however, the school board was an additional insured on the policy and had settled the claim over the immovable property. The insurer did not contest the church's interest in contents and lost business income, for which it had already

---

[1] Through discovery, Starr has also obtained a Joint Services Agreement ("JSA") between CPPJ and CPSO from 2010 relating to the lease of the Calcasieu Correctional Complex, "which includes the Correctional Center and the Administrative Building." Doc. 110, att. 8, p. 2. Under the JSA, CPPJ agrees *inter alia* to pay for property insurance on the leased premises while CPSO agrees to pay a fixed amount of rent on a quarterly basis. *Id.* at 1–2. This agreement "renew[s] on an annual basis, unless and until notice is given otherwise," though neither party can confirm whether it is still in effect. *Id.* At any rate, there is no indication that it covers the Maintenance Building. Accordingly, the court relies on the Gabb letter to the extent it confirms (1) the lack of a written agreement covering CPSO's use of the Maintenance Building and (2) the terms of CPSO's use of that building.

[2] The court distinguished *Haddad v. Elkhateeb*, 46 So.3d 244 (La. Ct. App. 4th Cir. 2010), on which CPSO relies, as that case found the lessee's insurable interest to extend only to "business personal property," including the coolers, shelves, and cash registers, of a supermarket. *Life Church*, 488 F.Supp.3d at 514. In this matter CPSO maintains a claim not just for the contents of the building but also for the total loss of the structure.

been paid, but the church maintained that it also had "a more substantial economic interest in the Building than the School Board because it made significant material improvements to the Building, invested 'large sums' of money and labor, and procured the Policy in order to protect its investment and financial interests." *Id.* at 512. The court rejected these arguments, noting that requirements as to maintenance of insurance are common in leases and that the church was also required to name the school board as additional insured. *Id.* at 514. The court further observed the lack of any right to purchase clause in the lease and the church's responsibility for maintenance and upkeep, thus giving the school board a greater interest in the church's structural improvements to the immovable property. *Id.* at 515.

Here, on the other hand, CPSO's argument centers on the Maintenance Building's role as "critical infrastructure." The Cole deposition as well as the sums spent on repair show that CPSO has a substantial economic interest in the building's repair and replacement for the furtherance of CPSO's—rather than CPPJ's—operations. Additionally, unlike *Life Church*, CPPJ is not an additional insured on the policy. It does not appear that CPPJ had insurance in place covering the property at the time of loss.[3] The

---

[3] CPSO provides an affidavit from Dean Kelly, Director of the Facility Management Department for CPPJ, who avers that the Maintenance Building is not listed in CPPJ's SOV for the insurance policy issued to it in effect between January 31, 2020, and January 31, 2021. Doc. 97, att. 11. This SOV lists two locations at 5400 East Broad Street, the same address as the Maintenance Building: "Sheriff Admin. Bldg. & Crime Lab" and "Sheriff Correctional Center." Doc. 97, att. 8, p. 4. Notably, the square footage of each location (8,867,000 ft$^2$ and 30,968,000 ft$^2$, respectively) differs from the square footage of the Maintenance Building (3,200 ft$^2$). Additionally, it appears that each building is listed as a separate location under the CPPJ SOV. For example, at the Intracoastal Park located at 7955 Intercoastal Park, Sulphur, Louisiana, there are five locations—two restrooms, two covered picnic areas, and a keeper's residence. *See id.* at locations 139, 193–96. Accordingly, the lack of any corresponding entry for the Maintenance Building on this SOV provides sufficient evidence that it was not covered under CPPJ's policy. To the extent it intended to raise the issue, Starr cannot rely on the policy's Other Insurance exclusion to avoid coverage.

fact that CPSO alone maintained coverage over the building supports that it was the entity with the greater interest in the immovable property.

### B. Coverage exclusions

Starr next argues that coverage over the building should be voided due to CPSO's misrepresentations on ownership. The policy provides:

> **A. CONCEALMENT, MISREPRESENTATION, OR FRAUD**
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your Interest in the Covered Property; or
> 4. A claim under this Coverage Part.

Doc. 97, att. 2, p. 7.

Under Louisiana law, an insurer may avoid coverage on grounds of material misrepresentation only where the statements were made with intent to deceive. *Chavez v. Homesite Ins. Co.*, 834 F.Supp.2d 504, 507 (E.D. La. 2011) (citing *Cousin v. Page,* 372 So.2d 1231, 1233 (La. 1979)). Because there will rarely be direct evidence of intent, this element "must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations . . . and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Id.* at 508. Starr argues that "[CPSO's] statements of ownership of the Maintenance Building were[] false and material, and the intent to deceive fact is, at the very least a disputed material fact that requires denial of [CPSO's] motion." Doc. 110, p. 23. But Starr has not shown the materiality of these statements, let

alone pointed to any circumstances supporting its claim that they were made with the intent to deceive. Additionally, its SOV shows that other properties insured under the same policy were identified as leased so it can hardly be the case that Starr would have declined to cover the Maintenance Building if it knew of CPPJ's ownership. *See* doc. 111, att. 3. Accordingly, Starr fails to carry its burden as the non-moving party on summary judgment.

### C. Coverage limitation

Starr next argues that the court should find that the policy is a scheduled one and that the limit of liability for the Maintenance Building is as set forth in the SOV. CPSO maintains that the policy is a replacement cost policy, as set forth under its opposition to Starr's motion for partial summary judgment. *See* doc. 112. The policy's Occurrence Limit of Liability Endorsement provides:

> A. It is agreed that the following special terms and conditions apply to, and are made a part of, the POLICY to which this Endorsement is attached:
> 1. The Limit of Liability or Amount of Insurance shown in the Declarations of this POLICY, or endorsed onto this POLICY, is the total limit of the COMPANY's liability applicable to each OCCURRENCE as hereafter defined. Notwithstanding any other terms and conditions of this POLICY to the contrary, in no event shall the liability of the COMPANY exceed this limit or amount irrespective of the number of LOCATIONS involved.
> 2. The premium for this POLICY is based upon the Schedule of Values on file with the COMPANY, or attached to this POLICY. In the event of loss hereunder, liability of the COMPANY **shall be limited to the least of the following**:
> a. The actual amount of loss, less applicable deductible(s);
> b. The **total stated value for the property involved**, for Property Damage and TIME ELEMENT separately, **as specified in the latest Statement of Values on file with the COMPANY, or attached to this POLICY**, less applicable deductible(s);
> c. The limit of liability or Amount of Insurance specified in the Declarations of this POLICY, or endorsed onto this POLICY.

Doc. 97, att. 2, p. 70 (emphasis added). CPSO argues that "total stated value" is ambiguous and should thus be read in favor of coverage to mean the entire limit of liability for the policy. The clause specifies that these stated values are found within the SOV, which provides values on a per building basis and then a total value ($56,700,621.00) for all properties, which corresponds to the limit of liability on the policy's declarations as set forth under 2(c). Doc. 111, att. 3; *see* doc. 97, att. 2, p. 3. CPSO's reading would render subsections (b) and (c) virtually identical, defeating the purpose of the different terms applied in each. Instead, "total" is more coherently read horizontally across the chart for each property to include the different kinds of coverage (Building Value, Content Value, and Business Interruption Value), especially as the SOV sums these into a column titled "Total Insured Value." Doc. 11, att. 3; *accord Berkshire Refrigerated Warehousing LLC v. Com. Underwriters Ins. Co.*, 2006 WL 862877 (N.D. Ill. Mar. 27, 2006). For the Maintenance Building, that total is $426,000 ($350,000 Building Value + $76,000 Contents). The parties agree that damages to the building exceed this amount. Accordingly, Starr's liability is limited to $426,000.

### D. Bad Faith

Finally, Starr requests that the court find that it is not in bad faith to the extent it has failed to tender any amount due on the Maintenance Building because of the reasonable disputes outlined above. As CPSO points out, however, it did not raise the issue of bad faith in its motion. Starr ought to have filed a cross-motion on the claim if it wished to extinguish the issue before trial.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 97] will be **GRANTED IN PART** and **DENIED IN PART** to the extent that the court finds that coverage is owed for the maintenance building but limited to $426,000.00.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of April, 2024.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE