UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| TONY MANCUSO | CASE NO. 2:21-CV-03947 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| STARR SURPLUS LINES INSURANCE CO | MAGISTRATE JUDGE LEBLANC |

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 98] filed by defendant Starr Surplus Lines Insurance Company ("Starr"). Plaintiff Tony Mancuso, in his official capacity as Calcasieu Sheriff and Tax Collector ("CPSO") opposes the motion. Doc. 109.

I.
BACKGROUND

This suit arises from damage to property owned by CPSO, a political subdivision of the state of Louisiana, in Hurricanes Laura and Delta and Winter Storm Uri. At all relevant times the property was insured under a surplus lines policy issued by Starr. CPSO filed suit in this court on November 12, 2021, alleging that Starr had failed to timely or adequately compensate it for covered losses. Doc. 1. Accordingly, it raised claims of breach of insurance contract and bad faith under Louisiana law. The matter is set for jury trial before the undersigned on April 22, 2024. Doc. 58.

Starr's policy with CPSO was in effect for one year beginning on May 1, 2020. Doc. 98, att. 7, p. 3. It has a per-occurrence limit of liability of $56,700,621, "excess of various

deductibles." *Id.* The policy also contains an exclusion for "loss or damage caused by or resulting from . . . [d]eterioration, depletion, . . . wear and tear, . . . rust, corrosion, . . . [or] wet or dry rot." *Id.* at 20. Unless another endorsement applies, losses are adjusted on the basis of "Actual Cash Value," defined as replacement cost "subject to a deduction for deterioration, depreciation, and obsolescence." *Id.* at 23–24, 28. The policy also contains a Replacement Cost Endorsement, however, providing coverage on a replacement cost basis not exceeding:

   a. the amount of the POLICY applicable to the damaged or destroyed property;
   b. the REPLACEMENT COST of the property or any part thereof with identical property or with like, kind, and quality of such property on the same premises and intended for the same occupancy and use; or
   c. the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

*Id.* at 74–75.

After Hurricane Laura made landfall on August 27, 2020, Starr retained Sedgwick Claims Management, Inc. as its independent adjuster. Doc. 98, att. 9, ¶ 1. Sedgwick assigned executive general adjuster Nathan Leverenz to the claim and Leverenz assembled a team of consultants, including building and structural consultant J.S. Held, LLC, to assist him in this work. *Id.* at ¶ 2. Based on Leverenz's recommendations Starr made two unallocated advance payments of $2.5 million each on September 29 and November 10, 2020, to cover mitigation costs and a payment of $3,226,814.00 on February 4, 2021, after receiving Leverenz's report on the actual cash value of damages. *Id.* at ¶ 5.

Starr now moves for summary judgment on CPSO's bad faith claims arising from coverage owed to the prison complex[1], listed as Location 004 under the policy. Doc. 98. There it argues that it issued all payments within the statutory time period of receiving satisfactory proof of loss and that any withheld amounts were based on reasonable disagreements about coverage and/or scope. CPSO opposes the motion. Doc. 109. Specifically, it notes disagreements about coverage and scope for (1) the roof of the men's prison, (2) mitigation costs, and (3) storm damages to the interior and exterior of the prisons, including the costs to restore them to pre-loss condition.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v.*

---

[1] CPSO maintains that Starr's motion is unclear as it appears to seek summary judgment only on claims relating to the "prison," and not to other buildings included in the complex and covered under Location 004. The court disagrees, finding Starr's use of "prison" to cover all buildings within the complex unless a specific building is cited.

*Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. Governing Law

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities

in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause." "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins., Co.*, 857 So. 2d 1012, 1021 (La. 2003)).

Under Louisiana law, "satisfactory proof of loss" means "only that which is sufficient to fully apprise the insurer of the insured's claims." *Id.* at 1119 (internal quotations omitted). "Louisiana decisions demonstrate that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted). Additionally, an insurer may violate Louisiana's bad faith

statutes when it fails to adequately inspect the insured property before denying a claim. *See Jacobs v. GEICO Indem. Co.*, 256 So.3d 449, 457 (La. Ct. App. 2d Cir. 2018) (upholding bad faith verdict against GEICO based on trial evidence that its adjuster failed to thoroughly inspect a vehicle before denying a flood claim).

### B. Application

Starr maintains that it timely issued all payments relating to the men's prison complex after receiving satisfactory proof of loss. It admits, however, that the parties dispute the remaining amounts owed for the roof at this location, the mitigation costs, and certain other claimed damages. Accordingly, Starr is not entitled to summary judgment if a material fact exists as to the reasonableness of its refusal to pay. The court considers each category in turn.

### 1. Prison complex roof

Starr admits that, based on the recommendation of Leverenz and J.S. Held, it has not paid an additional $2.7 million in roofing costs sought by CPSO at Location 004. This is because Starr maintains that only the roof surface requires replacement, while CPSO seeks replacement of the underlying metal decking and concrete substrate as well. Doc. 98, att. 9, ¶¶ 35–36; doc. 98, att. 29, ¶¶ 6–7. At the behest of CPSO's roofing contractor, ECO Roof and Solar ("ECO"), OMG Roofing Products ("OMG"), the manufacturer of the roof's original fasteners, performed fastener pull testing on the existing roof on October 29, 2020, to ascertain the integrity of the roof deck pan. Doc. 109, att. 1. These results were sent to the manufacturer, Garland Company, Inc. ("Garland") for review by Garland's engineers. Doc. 109, att. 2. Garland then determined that a long-term warranty could only be issued

for the new roof if the decking were replaced. *Id.* After receiving this information Starr evaluated the roof through J.S. Held's professional engineer, Chad Zielinski. Zielinski performed field testing of the roof deck on November 9 and 10, 2020, and confirmed his earlier findings that only replacement of the surface was required, "with isolated repairs to the lightweight insulating concrete as needed." Doc. 98, att. 15, ¶¶ 22–25.

The fact that an insurance company's own expert disputes the scope of damages determined by plaintiff's expert does not, as a matter of law, establish that the insurer acted reasonably. *Cazenave v. Anpac La. Ins. Co.*, 2016 WL 7368414, at *7 (E.D. La. Dec. 20, 2016). Instead, the reasonableness of the insurer's decision becomes a factual determination that is often difficult to evaluate on a summary judgment record. *See id.* (citing *Hartenstein v. State Farm Fire & Cas. Ins. Co.*, 2008 WL 2397713, at *3 & n. 22 (E.D. La. Jun. 10, 2008)). As Louisiana courts have repeatedly emphasized, "summary judgment is rarely appropriate for the disposition of issues requiring a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So.3d 670, 677 (La. Ct. App. 4th Cir. 2014) (citing *Greater Lafourche Port Comm'n v. James Const. Grp., LLC*, 104 So.3d 84, 88 (La. Ct. App. 1st Cir. 2012)); *accord Burrell v. Phillips*, 2021 WL 720635, at *3 (E.D. La. Feb. 24, 2021) (citing *Johnson v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 1745497, at *4 (E.D. La. May 16, 2012)). At present the court does not have a deposition from any individual involved in the respective testing/recommendations. Here, especially given the involvement of pre-litigation experts and the roofing system's manufacturers in these recommendations, the court cannot evaluate the reasonableness of Starr's refusal to

cover full replacement of the roof. Such a ruling will likely require credibility determinations as to the individuals who made the recommendations as well as expert testimony not yet presented. Accordingly, summary judgment is denied on this portion of CPSO's bad faith claim.

### 2. Mitigation expenses

As for mitigation expenses, CPSO engaged Claremont Property Company ("Claremont") immediately after the storm to perform mitigation work, including removal of affected porous material, water extraction services, and interior drying. Doc. 98, att. 9, ¶¶ 22–23. Claremont invoiced CPSO a total of $3,453,022.00 for its work and Starr paid for a portion of this amount after auditing the invoices at CPSO's request. *Id.* at ¶ 23; doc. 98, att. 13, pp. 271–75. Of the amount invoiced, only $566,321.00 related to mitigation work performed at the prisons. Doc. 109, att. 4, ¶ 7. The bad faith claim relates, however, to mitigation work done by subsequent companies after Continental Adjusters, retained by CPSO, recommended additional work beginning in December 2020. After Knight Restoration obtained elevated moisture readings throughout the prison complexes, Fercam Group ("Fercam") was hired to evaluate mold issues. Doc. 109, att. 3, pp. 199–200, 204. Continental's lead consultant testified that Knight Restoration and Fercam both provided their recommendations, namely to dry the place out, to CPSO and Continental informally before Fercam's formal report was issued on December 23, 2020. *Id.* at 198–200, 229, 237. Pursuant to these recommendations CPSO awarded a contract to Ryder and Ryder, Ltd. ("Ryder") on December 23, 2020. Doc. 98, att. 9, ¶ 26. CPSO also hired civil engineer/mold expert Wynn White, who performed a visual inspection of the men's prison

on January 14, 2021, and reported "moisture problems in various areas at the facility, water damaged steel doors and building materials, and materials exhibiting characteristics of mold growth." Doc. 109, att. 6, pp. 38–39. He also found elevated moisture readings in the men's prison. *Id.* at 11–12.

In response Leverenz retained Ensolum LLC ("Ensolum") with Starr's approval to provide industrial hygiene services, inspect CPSO's prison structures for indications of water damages, and provide recommendations on the mitigation/remediation services required. Doc. 98, att. 9, ¶ 28. Ensolum personnel visually inspected accessible areas of the men's prison complex on January 7 and 8, 2021. Doc. 98, att. 34, ¶¶ 7–8. They observed "no widespread or significant indications of water-damaged building materials" but did see "significant debris deposits" throughout the main complex resulting from the removal of the roof structure. *Id.* at ¶ 8. Leverenz informed CPSO of these findings and his decision not to support the additional scope of mitigation work. Doc. 98, att. 9, ¶ 29. Ensolum personnel then conducted periodic site evaluations thereafter between January 13 and March 16, 2021, to observe the work being done by Ryder and its subcontractors. Doc. 98, att. 34, ¶ 9. It determined that the work performed "had occurred not because of hurricane damage but rather because of [CPSO's] decision to upgrade the prison and replace the entire roofing system." *Id.* at ¶ 10. Based on these findings Starr refused to pay for additional remediation work at the men's prison. Doc. 98, att. 29, ¶¶ 8–9.

As with the roofing dispute, this matter requires a determination on the reasonableness of Starr's assessments. Accordingly, summary judgment is inappropriate

because it "depends on factual determinations concerning the reasonableness of the insurer's actions." *Burrell*, 2021 WL 720635, at *3.

### 3. Other disputes

Finally, Starr acknowledges payment disputes for (1) architectural and engineering fees, (2) tree damages, and (3) other changes regarded by Starr as improvements. CPSO does not address the first two categories in its opposition. On the architectural and engineering fees, Starr shows that it has rejected CPSO's claim for additional fees based on Starr's position that these are a result of CPSO's alleged upgrades of the facility rather than the hurricanes. Doc. 98, att. 9, ¶ 43. Starr further asserts, through Leverenz's declaration, that it "repeatedly sought without success to communicate with VSG Architects engaged by Mancuso in the build-back and public-bid process to discuss their findings and assessments." *Id.* at ¶ 44. As discussed below, however, Starr is not entitled to summary judgment on its bad faith claims relating to these alleged upgrades. There is also insufficient evidence in the record relating to its engagement with VSG Architects[2] and its evaluation of the claimed fees for the court to determine the reasonableness of its position. Summary judgment will thus be denied as to the related bad faith claims.

As for tree removal, Starr provides through Leverenz's declaration that it denied a $100,000.00 claim for tree damages because it previously assessed these in an April 2021 loss measure and had already paid the amount due under the policy's applicable sub-limit.[3] *Id.* at ¶ 45. CPSO presents nothing in opposition here but argues elsewhere that the tree

---

[2] And, indeed, whether this is the only firm for whom the additional fees are claimed.
[3] The policy provides a $100,000.00 sublimit for trees and shrubs, not to exceed $25,000.00 per tree or shrub. Doc. 98, att. 7, p. 14.

limit has not yet been paid because it was not carried over to the "Total RCV" column in Leverenz's most recent Master Loss Schedule. *See* doc. 112, pp. 25–26. For the same reasons set forth under that motion, Starr has failed to carry its burden as to its satisfaction of this sublimit.

      Finally, as to the remaining claimed interior/exterior damages at Location 004, Starr admits that it has denied coverage based on a determination that these represent upgrades, repairs due to normal wear and tear, or additional damage caused by CPSO's disputed decision to replace the entire roof. *Id.* at ¶ 42. Other than this cursory assertion from Leverenz, however, Starr cites only the statement of Ensolum manager Jacob Colson that his findings "revealed that the claimed remitigation work had occurred not because of hurricane damage but rather because of [CPSO's] decision to upgrade the prison and replace the entire roofing system." Doc. 98, att. 34, ¶ 10. No detail is provided as to the nature of these upgrades or the wear and tear, as evaluated by Starr, and so the court cannot evaluate the reasonableness of its position. Summary judgment will likewise be denied on this claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 98] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of April, 2024.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**