UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **TONY MANCUSO** | **CASE NO. 2:21-CV-03947** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STARR SURPLUS LINES INSURANCE CO** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the court is a Motion to Reconsider [doc. 133] filed by plaintiff Tony Mancuso, in his official capacity as Calcasieu Sheriff and Tax Collector ("CPSO") and seeking reconsideration of this court's determination of the applicable limits of liability for different properties in prior rulings on Motions for Partial Summary Judgment [docs. 97, 99]. Defendant Starr Surplus Lines Insurance Company ("Starr") opposes the motion. Doc. 157. Starr has also filed its own Motion to Reconsider, arguing that the limit of liability should be confined to each separate area of coverage. Doc. 155.

### I.
#### BACKGROUND

This suit arises from damage to property owned by CPSO, a political subdivision of the state of Louisiana, in Hurricanes Laura and Delta and Winter Storm Uri. At all relevant times the property was insured under a surplus lines policy issued by Starr. CPSO filed suit in this court on November 12, 2021, alleging that Starr had failed to timely or adequately compensate it for covered losses. Doc. 1. Accordingly, it raised claims of breach of

insurance contract and bad faith under Louisiana law. The matter is set for jury trial before the undersigned on April 22, 2024. Doc. 58.

CPSO brought a motion for partial summary judgment relating to coverage of a maintenance building located at 5400 East Broad Street and identified as Location 001, Building 003 under the policy's Schedule of Values ("SOV"). Doc. 97. In its opposition Starr disputed coverage and, in the alternative, asked the court to rule that its liability was limited to the declared values for that building set forth under the SOV. Doc. 112. Starr also brought a motion for partial summary judgment [doc. 99] on various coverage issues, and asked therein that the court determine that the policy was a "scheduled policy, not a blanket limit of liability policy," with CPSO's recovery at each "limited to the value or amounts Mancuso declared for any property at a scheduled Location during the underwriting process." Doc. 99, att. 1, p. 10. The court agreed with Starr's position, ruling first on CPSO's motion for partial summary judgment that coverage was owed for the maintenance building but limited to the declared values for that property on the SOV. *See* doc. 126, pp. 9–11.

The same day the ruling was issued, CPSO filed this Motion to Reconsider [doc. 133]. There it asks the court to consider its assertion raised in opposition to Starr's Motion for Partial Summary Judgment[1] that the limit of liability ought, at least, to be determined on a per-location rather than per-property basis. In support of its motion it produces additional evidence that Starr interpreted the policy in this manner throughout the claims

---

[1] The court's ruling on Starr's motion issued shortly before plaintiff's Motion for Reconsideration was filed, with identical handling of the limit of liability issue. *See* doc. 131. Accordingly, the court will address both rulings under this motion.

handling process and has issued payments above the per-property declared value. In response Starr argues against this interpretation based on the text of the policy and points to the a policy clause providing that the terms can only be waived through endorsement issued by Starr.[2] Doc. 157.

## II.
## LAW & APPLICATION

### A. Legal Standard

Federal Rule of Civil Procedure 54(b) allows the court to reconsider an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010). An interlocutory order is one that "adjudicates fewer than all the claims . . . of all the parties," such as the ruling here denying LIGA's motion to dismiss for lack of jurisdiction. Fed. R. Civ. P. 54(b). Although the rule grants the court broad discretion to reconsider, "this power is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *United States v. Cytogel Pharma, LLC*, 2017 WL 3849317 (E.D. La. Mar. 28, 2017) (internal quotations omitted). Courts evaluate motions to reconsider under Rule 54(b) under a "less exacting" standards than those applied to final judgments under Rules 59(e)

---

[2] The clause states:
>  **B. Changes**
>  This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Doc. 99, att. 7, p. 7.

and 60(b) but still look to the latter rules for guidance. *In re Padco Pressure Control, LLC*, 2017 WL 161647, at *1 (W.D. La. Jan. 13, 2017) (collecting cases). To this end, the court should consider whether there are "manifest errors of law or fact upon which judgment is based[,]" whether "new evidence" is available, whether there is a need "to prevent manifest injustice," or whether there has been "an intervening change in controlling law." *Id.* (quoting *HBM Interests, LLC v. Chesapeake La., LP*, 2013 WL 3893989 (W.D. La. Jul. 26, 2013)).

### B. Application

The court previously held that the policy's Occurrence Limit of Liability Endorsement limited Starr's liability for each property to the total stated value for that property, comprising all the types of coverage (Building Value, Contents Value, and Business Interruption Value) provided in the SOV. The relevant endorsement states:

> A. It is agreed that the following special terms and conditions apply to, and are made a part of, the POLICY to which this Endorsement is attached:
> 1. The Limit of Liability or Amount of Insurance shown in the Declarations of this POLICY, or endorsed onto this POLICY, is the total limit of the COMPANY's liability applicable to each OCCURRENCE as hereafter defined. Notwithstanding any other terms and conditions of this POLICY to the contrary, in no event shall the liability of the COMPANY exceed this limit or amount irrespective of the number of LOCATIONS involved.
> 2. The premium for this POLICY is based upon the Schedule of Values on file with the COMPANY, or attached to this POLICY. In the event of loss hereunder, liability of the COMPANY **shall be limited to the least of the following**:
>> a. The actual amount of loss, less applicable deductible(s);
>> b. The **total stated value for the property involved**, for Property Damage and TIME ELEMENT separately, **as specified in the latest Statement of Values on file with the COMPANY, or attached to this POLICY**, less applicable deductible(s);

> c. The limit of liability or Amount of Insurance specified in the Declarations of this POLICY, or endorsed onto this POLICY.

Doc. 97, att. 2, p. 70 (emphasis added).

The court finds no need to revisit its prior determination as to the policy's plain language.[3] It will, however, revisit those rulings as to CPSO's evidence of waiver. CPSO has produced additional evidence in the form of emails from Andrea Stroink, Starr's desk adjuster, as well as proof of payment above the per-property building and contents limits for certain properties in the December 2023 Master Loss Schedule prepared by Nathan Leverenz, who acted as Starr's field adjuster in this matter.[4] The emails from Ms. Stroink are part of a discussion with Mr. Leverenz between September 23 and September 25, 2020, beginning with his submission of a draft Rough Order of Magnitude. In response Ms. Stroink stated:

> Hi Nate,
>
> I spoke to Jim. We are in agreement that per the occurrence limit of liability endorsement, the location will be per street address. Please let me know if you need any further information.

---

[3] The Schedule of Values only provides totals on a per-building, rather than per-location, basis and the court can find nothing within the policy allowing the term "property" to be conflated with "location." Instead, the policy uses the term "INSURED LOCATION" in several instances to specify the separate addresses listed on the SOV while "property" refers to real or personal property whether at those locations and/or insured under the policy. *See, e.g.*, doc. 99, att. 7, p. 17 (Property Coverage Form General Conditions, stating that the policy "covers the property insured hereunder . . . while at INSURED LOCATIONS); *id.* at 55 (Extra Expense Endorsement, applying after "direct physical loss or damage of real or personal property at an INSURED LOCATION(S)"); *id.* at 69 (Newly Acquired Locations Endorsement, stating that the policy would automatically extend "to cover any newly acquired property at LOCATIONS not already covered under this POLICY" for a certain time limit after the location's acquisition"); *id.* at 80 (Temporary Removal of Property Endorsement, providing coverage for "personal property of the insured while removed from an INSURED LOCATION"). Accordingly, there is no ambiguity as to the meaning of "total stated value for the property involved . . . as specified in the latest Statement of Values on file with the COMPANY" and no basis for the court to apply CPSO's per-location total argument under the terms of the policy.

[4] The spreadsheet was too large to be legible or easily navigable in PDF format. Accordingly, it was provided in native Excel format by email to chambers with opposing counsel copied. CPSO will be requested to provide a copy as a manual attachment to form part of the record of the case.

Doc. 133, att. 2, p. 2. Mr. Leverenz then asked, "so as to confirm, if the same street address (multiple building) we can add together the report values and that is our total limits for that location – street address?" *Id.* at 1. Stroink replied:

> If you look at the definition of LOCATION in the policy and apply that definition to the Schedule of insurance you will see [that] they have a number of locations listed for LOCATION 1. So per the definition of LOCATION in the policy you would add up all the values for LOCATION 1 for PD which is your overall limit for LOCATION 1.

*Id.* Based on Leverenz's Master Loss Schedule, the policy was then applied in this manner with a limit only applied per location rather than per building. Accordingly, for example, Starr paid nearly $700,000.00 for damages to the Forensic Office Building (Location 001, Building 007), which had a building limit of $305,000.00 and a contents limit of $62,000.00. In prior motions for summary judgment, however, Starr sought—and the court agreed—that a per-building limit applied based on the plain language of the policy.

Under Louisiana law, waiver requires "an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Moreno v. Entergy Corp.*, 233 So.3d 176, 184 (La. Ct. App. 5th Cir. 2017) (citing *Arceneaux v. Amstar Corp.*, 66 So.3d 438, 451 (La. 2011)). Waiver may apply to any provision of an insurance contract, even if it has the effect of extending coverage. *Steptore v. Masco Const. Co.*, 643 So.2d 1213, 1216 (La. 1994). Additionally, an insurer is charged with knowledge of the contents of its own policy. *Koehl v. RLI Ins. Co.*, 367 So.3d 122, 129 (La. Ct. App. 5th Cir. 2023) (citing *Steptore*, 643 So.2d at 1216)). Similarly, an insurer may be estopped from limiting coverage when it or its agent misrepresents to an insured the coverage offered

under the policy and the insured reasonably relies on this misrepresentation to its detriment. *Cugini, Ltd. v. Argonaut Great Cent. Ins. Co.*, 889 So.2d 1104, 1114–15 (La. Ct. App. 5th Cir. 2004) (citing *Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La. 1975)). This reliance can be found when the insurer knows the insured is proceeding with repairs but fails to notify it that the repairs will not by covered. *Id.*

CPSO has shown that Starr enforced policy limits only on a per-location basis almost from the inception of the claim. Starr's clause limiting waiver to Starr's own endorsement cannot trump Louisiana law on this issue.[5] CPSO evidently relied on these representations, through Starr's payments, in authorizing repairs. Starr's attempted about-face on coverage nearly four years later, on the eve of trial, is inexcusable. Accordingly, Starr is considered to have waived the per-building limit and is estopped from now imposing it.

---

[5] Additionally, Louisiana courts have consistently considered evidence of oral modification of a contract even in the face of such clauses. *E.g.*, *Pelican Electrical Contractors v. Neumeyer*, 419 So.2d 1 (La. Ct. App. 4th Cir. 1982); *Victus 1, Inc. v. Stocky's World Famous Pizza #14, Inc.*, 256 So.3d 1146, 1151 (La. Ct. App. 2d Cir. 2018). Here, however, CPSO is not required to show mutual consent to a modification of the policy's terms. Instead, it only has to show Starr's prior failure to enforce the limits it is now imposing.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Reconsider [doc. 133] filed by CPSO will be **GRANTED**, the Motion to Reconsider [doc. 155] filed by Starr will be **DENIED**, and the Motion to Clarify Written Reasons [doc. 147] filed by CPSO will be **DENIED AS MOOT**. Accordingly, the court's prior summary judgment rulings [docs. 126, 131] are **MODIFIED** to reflect that the limit of liability in this matter is determined based on the total declared values at each Location on the Schedule of Values. Additionally, CPSO is directed to provide a copy of the Excel spreadsheet referenced supra at note 3 on a USB drive to the clerk's office to serve as a manual attachment for the record of this matter.

**THUS DONE AND SIGNED** in Chambers on the 15th day of April, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**